UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNA MEYER,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO PUBLIC LIBRARY, et al.,<br><br>Defendants. | Case No. 17-cv-02278-MEJ<br><br>**ORDER RE: MOTION TO DISMISS; ANTI-SLAPP MOTION**<br><br>Re: Dkt. Nos. 10, 19 |

## INTRODUCTION

Pending before the Court are two motions filed by Defendant City and County of San Francisco. Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Mot., Dkt. No. 10. Plaintiff Jenna Meyer filed an Opposition (MTD Opp'n, Dkt. No. 16) and Defendant filed a Reply (MTD Reply, Dkt. No. 20). Defendant also filed an anti-SLAPP Motion pursuant to California Civil Code § 425.16. Anti-SLAPP Mot., Dkt. No. 19. Plaintiff filed an Opposition (Anti-SLAPP Opp'n, Dkt. No. 23), and Defendant filed a Reply (Anti-SLAPP Reply, Dkt. No. 24).

The Court finds both motions suitable for disposition without oral argument and **VACATES** the August 17, 2017 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES** Defendant's Anti-SLAPP Motion for the following reasons.

## BACKGROUND

Plaintiff filed this action in San Francisco Superior Court, and Defendant removed the action to this Court on April 24, 2017. *See* Notice of Removal, Dkt. No. 1. The parties stipulated to the filing of a First Amended Complaint ("FAC"). *See* Stip., Dkt. No. 8; FAC, Dkt. No. 9.

Plaintiff alleges "Doe Defendant number 1 is the person who personally did the actions complained of below and at all times mentioned in this complaint was the agent or employee" of the San Francisco Public Library and Defendant. FAC ¶ 3. On November 23, 2016, while Plaintiff was in the women's bathroom at the Main Library in San Francisco, Doe Defendant 1 touched Plaintiff's purse with the intent to harm or offend her; Plaintiff was holding her purse close to her body and did not consent to the touching. *Id*. at p. 3.[1] Doe Defendant 1 yelled at Plaintiff and accused Plaintiff of stealing a roll of toilet paper. *Id*. Doe Defendant 1 demanded to search Plaintiff's purse. *Id*. at pp. 3-4. Doe Defendant 1 made these statements such that persons other than Plaintiff heard them. *Id*. At the time of the incident, Plaintiff was well dressed, wearing valuable jewelry, and holding a purse that was worth more than $6,000. *Id*. at p. 6. Any reasonable person would have known that someone dressed like Plaintiff was not likely to steal "a cheap roll of single ply industrial grade toilet paper." *Id*. Doe Defendant 1 made these accusations because Plaintiff is "quite obviously a transsexual male to female person" and discriminated against Plaintiff "due to her sexual orientation" and "her gender status." *Id*.[2]

On November 23, 2016, Doe Defendant 1 was acting in the performance of her official duties as an employee of Defendant. *Id*. at p. 7. Defendant failed to train their employees, "in particular Defendant Doe #1" by not providing any training program about the civil rights of the patrons of the library or how to deal with the public. *Id*. Defendant's failure to provide such training to janitorial employees demonstrates a pattern and policy of deliberate indifference to ensuring the public would not be victimized by the unconstitutional denial of civil rights. *Id*. at p.

---

[1] In her Opposition to the Anti-SLAPP Motion, Plaintiff explains the incident occurred on October 23, 2016, and that she will seek to amend the FAC to so reflect. *See* Anti-SLAPP Opp'n at 7. The precise date of the incident is not material for purposes of this Order.

[2] The FAC alleges Doe Defendant 1 discriminated against Plaintiff because Plaintiff is a transgender woman, but also alleges Doe Defendant 1 discriminated against Plaintiff based on her sexual orientation. FAC at pp. 6-9 *see also* Opp'n at 4-5 ("It is further alleged that said conduct was done for the prejudiced reason that Doe Defendant 1 was persecuting the plaintiff due to her sexual orientation, namely that she was a transgendered."). The Court quotes the FAC so as to accurately reflect Plaintiff's allegations and claims; however, the Court recognizes gender identity is distinct from sexual orientation. *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1081 (9th Cir. 2015) ("While the relationship between gender identity and sexual orientation is complex, and sometimes overlapping, the two identities are distinct.").

8. It "should have been obvious to [Defendant] that the total lack of any training program for its janitors and maintenance employees or agents would likely [result] in a deprivation of the right of the public to not be discriminated against for their sexual orientation." *Id*. The failure to train caused the violation of Plaintiff's right to equal protection under the Fourteenth Amendment. *Id*. at pp. 8-9. Plaintiff experienced extreme emotional distress as a result of this incident, and to this day avoids going to any public places where she will have to use a large public bathroom. *Id*. at pp. 5, 7.

Based on these allegations, Plaintiff asserts common law claims for assault, battery, slander, and intentional infliction of emotional distress ("IIED"). Plaintiff also asserts two claims under 42 U.S.C. §1983: an equal protection claim, and a *Monell* claim for failure to train.

Defendant moves to dismiss both federal claims and the intentional infliction of emotional distress claim; Defendant also moves to dismiss Plaintiff's claim for punitive damages. *See* Mot.

## MOTION TO DISMISS

### I. LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the

3

speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## II. DISCUSSION

### A. Section 1983

Assuming Plaintiff adequately alleges enough facts to support a constitutional violation[3], Defendant argues Plaintiff's *Monell* claim is fatally deficient because she does not plead a policy or custom within the City of San Francisco that condones civil rights violations. Mot. at 5.

#### 1. *Legal Standard*

Pursuant to 42 U.S.C. § 1983, a plaintiff may assert a cause of action against any person

---

[3] The parties dispute whether Plaintiff has sufficiently identified a comparison group to state an equal protection claim. *See* Mot. at 4-5; MTD Opp'n at 11-12. Fairly read, the FAC alleges that Plaintiff was the only transgender woman in the bathroom on November 23, 2016, and that the comparison group is the other women in the bathroom at that time. FAC at pp. 6-9; *see also* Meyer Decl. at 2, Dkt. No. 23-1. The FAC does, however, also appear to allege that the comparison group is women who appear to be poor and/or homeless. *Id.* at p. 6. In amending her FAC, Plaintiff should clarify that she alleges the other women in the bathroom were not transgender women, and allege how Doe Defendant 1 treated the members of the comparison group differently.

4

who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not itself a source of substantive rights, but merely provides a vehicle for a plaintiff to bring federal statutory or constitutional challenges to actions by state and local officials. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, a municipality is liable only if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered." *Id.* at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007). To hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury. *Monell*, 436 U.S. at 690-92, 694-95.

Moreover, "[i]n order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Bedford v. City of Hayward*, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting *Warner v. Cty. of San Diego*, 2011 WL 662993, *4 (S.D. Cal. Feb. 14, 2011)); *see also AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding that *Twombly* and *Iqbal* pleading standard also applies to *Monell* claims). Prior to *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). However, such conclusory allegations no longer suffice and a plaintiff is required to state facts sufficient "to state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547). "*Monell* allegations must be [pled] with specificity." *Galindo v. City of San Mateo*, 2016 WL 7116927, at *5 (N.D. Cal. Dec. 7, 2016).

2. *Analysis*

Applying these principles to the facts of this case, the Court finds Plaintiff has not stated a plausible claim for *Monell* liability under § 1983. As described above, Plaintiff alleges with specificity one encounter with Doe Defendant 1, but she does not plead with specificity any facts that would give rise to municipal liability in this case.

With respect to her equal protection claim, Plaintiff identifies no policy, well-settled practice, or custom by Defendant. *See* FAC at pp. 7-9. Plaintiff alleges a single, isolated alleged constitutional violation, i.e., the November 23, 2016 incident involving one City employee. In general, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. . . ." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("The custom must be so persistent and widespread that it constitutes a permanent and well settled city policy. . . . Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." (internal quotation marks omitted)); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee."); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) ("Proof of random acts or isolated events is insufficient to establish custom."). Plaintiff alleges no relevant policy, practice, or custom by Defendant; she only alleges discrimination by Doe Defendant 1 in the scope of her official duties, but she does not connect that discrimination to a policy, practice, or custom. The FAC accordingly does not state an equal protection claim against Defendant under *Monell*.

With respect to her failure to train claim, Plaintiff relies entirely on the conclusory allegations that Defendant failed to train its janitorial employees in how to interact with the public, that it should have been obvious that the lack of such training would result in a deprivation of the right of the public not to be discriminated against for their "sexual orientation," and that "the total lack of training as to how to deal with the public" was the cause of the violation of Plaintiff's right to equal protection. FAC at pp. 8-9. The Supreme Court has held that inadequate training may

6

constitute a "policy" under *Monell* that gives rise to municipal liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1988); *Long v. Cty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006). A plaintiff alleging a failure to train claim must show: (1) she was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its employees] are likely to come into contact;" and (3) her constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee*, 250 F.3d at 681. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007). A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682.

Here, Plaintiff alleges Defendant was deliberately indifferent because it failed to train its employees in any manner regarding library patrons' civil rights to ensure patrons would not be discriminated against based on their "sexual orientation." FAC at pp. 8-9. First, as noted above, the FAC alleges Plaintiff is a transgender woman; the FAC alleges no facts relating to Plaintiff's sexual orientation or Doe Defendant 1's perception of Plaintiff's sexual orientation. The FAC accordingly does not state any § 1983 claim for discrimination based on Plaintiff's sexual orientation. Second, Plaintiff does not allege facts showing Defendant "'disregarded the known or obvious consequence that a particular omission in [the City's] training program would cause [municipal] employees to violate citizens' constitutional rights.'" *Flores v. Cty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)). Plaintiff pleads no facts showing Defendant should have been or was on notice that the failure to train janitorial employees about "how to interact with the public" would cause employees to violate the civil rights of transgender library patrons. For example, she pleads no facts suggesting

that similar incidents had occurred in the past or that patrons had made prior complaints about discrimination by janitorial staff, allegations that would show Defendant was or should have been on notice that the failure to train its janitorial employees would cause them to violate the rights of transgender citizens. Plaintiff's allegations are purely conclusory and are not sufficient to state a claim.

Accordingly, the Court GRANTS Defendant's Motion on this ground.

B.     IIED

To state a claim for IIED, Plaintiff must allege (1) extreme and outrageous conduct by Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) she suffered severe or extreme emotional distress; and (3) her emotional distress was actually and proximately caused by Defendant's outrageous conduct. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). Conduct is "extreme and outrageous" if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1001. Behavior can be considered outrageous if the defendant "(1) abuses a relation or position which gives him power to damage the plaintiff's interest, (2) knows the plaintiff is susceptible to injury through mental distress, or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Hernandez v. Gen. Adjustment Bureau*, 199 Cal. App. 3d 999, 1007 (1988) (internal quotation marks omitted).

Defendant's description of the allegations as "inquiring as to whether a patron stole City property and touching a purse" (Mot. at 6) does not accurately reflect the FAC. Plaintiff alleges that Doe Defendant 1 "touched" Plaintiff's purse while Plaintiff was holding her purse close to her body and "yell[ed] . . . that she wanted to see inside her purse because she accused [Plaintiff] of stealing a roll of toilet paper from a stall in the bathroom" in front of several other people. *See* FAC at pp. 3-5. The FAC alleges Doe Defendant 1 must have been motivated by discriminatory animus because Plaintiff is "quite obviously a transsexual male to female person[,]" "any reasonable person would have seen by the clothing and jewelry that the plaintiff was wearing that she was not going to be stealing a roll of toilet paper[,]" and "there was no other reason for singling [Plaintiff] out for such an allegation when the bathroom was full of homeless and vagrant

8

persons." *Id*. at pp. 5-6. But the FAC alleges no facts showing Doe Defendant 1 was aware that Plaintiff is a transgender woman (much less motivated by that awareness), was aware of the quality or cost of Plaintiff's clothing and jewelry (assuming the value of Plaintiff's attire indicates a propensity to steal), did not actually believe Plaintiff had stolen the toilet paper, or made the accusation with the intent to cause distress, rather than to prevent theft. Plaintiff's allegation regarding Doe Defendant 1's motivation is purely conclusory. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The remaining allegations describe "'mere insults, indignities, threats, annoyances [or] petty oppressions'" – all of which are insufficient to state a claim for IIED. *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (quoting Restatement (Second) of Torts § 46, cmt. d); *cf. Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 496-7 (1970) (African-American plaintiff pleaded outrageous conduct by alleging Caucasian supervisor hurled stream of racial slurs at him and fired him on the spot). Because Plaintiff does not state an IIED claim based on Doe Defendant 1's conduct, she cannot state an IIED claim against Defendant as Doe Defendant 1's employer.

### C. Punitive Damages

Plaintiff clarifies that she is not seeking punitive damages from the City. Opp'n at 13. The Court construes Defendant's motion to dismiss this request for relief as a motion to strike pursuant to Federal Rule of Civil Procedure 12(f) and STRIKES Plaintiff's request for punitive damages as to the City.

## ANTI-SLAPP MOTION

### I. LEGAL STANDARD

California adopted Code of Civil Procedure section 425.16 because there had "been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" and it was "in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id*. § 425.16(a). Pursuant to this statute, "[a] cause of action against a person arising from any act of that person in

9

furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike." *Id.* § 425.16(b)(1). The statute defines an "act in furtherance of a person's right of petition or free speech" as including:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425.16(e).

The Court evaluates Defendant's anti-SLAPP Motion using a two-step process. *See Commonwealth Energy Corp. v. Investor Data Exch., Inc.*, 110 Cal. App. 4th 26, 31 (2003). First, the Court must determine whether Defendant "made a threshold showing that the challenged cause of action is one arising from a protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). If Defendant makes this showing, the burden then shifts to Plaintiff to establish there is a probability she will prevail on the merits of each of her claims. Cal. Civ. Proc. Code § 425.16(b)(1).

## II. DISCUSSION[4]

Defendant argues the allegations of the FAC concern protected activity because the conduct underlying each of Plaintiff's claims constitutes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Anti-SLAPP Mot. at 5 (quoting Cal. Civ. Proc. Code §

---

[4] Plaintiff argues the anti-SLAPP Motion is untimely because it was filed more than 60 days after service of the Complaint. Anti-SLAPP Opp'n at 8. The California Court of Appeals has held that the 60-day deadline also applies to amended complaints, and not only to "original" complaints. *See Lam v. Ngo*, 91 Cal. App. 4th 832, 840-42 (2001) (analyzing cases); *see also Harper v. Lugbauer*, 2012 WL 1029996, at *2 (N.D. Cal. Mar. 15, 2012) (anti-SLAPP motion timely because filed within 60 days of filing of most recent amended complaint). Defendant's Anti-SLAPP Motion was filed 60 days after the FAC was filed. *See* Dkt. It is therefore timely.

425.16(e)(4)).

Specifically, Defendant alleges the "communication between a public employee and a library patron, in which the public employee allegedly accused the patron of stealing public property and touched her purse because of her transgender status" is protected conduct. Anti-SLAPP Mot. at 5; Anti-SLAPP Reply at 2-4 (allegations of FAC "are based on Ms. Escobar's speech in connection with issues of public interest—gender discrimination and theft of public property."). This argument misrepresents the allegations of the FAC. The FAC alleges that Doe Defendant 1 (identified now as Ms. Escobar) accused Plaintiff of stealing because Plaintiff is a transgender woman, not that Ms. Escobar was engaging in speech "in connection" with those issues. *Cf. Averill v. Superior Court*, 42 Cal. App. 4th 1170, 1174-75 (1996) (private statements criticizing placement of homeless shelter were made "in connection with an issue of public interest" and thus protected); *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1467-70 (2005) (allegedly libelous letters from attorney for homeowners' association ("HOA") concerning disputes over building plans and HOA guidelines were part of ongoing discussion that contributed to public debate, and thus protected); *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1545-47 (2005) (report disseminated among church members concerning allegations that church youth group leader and her husband engaged in inappropriate sexual relationship with a minor "clearly involved issues of public interest, because [it] involved the societal interest in protecting a substantial number of children from predators"; moreover, church referred matter to police department). Ms. Escobar is not being sued because she wrote a letter to the San Francisco Chronicle about the theft of public property at the library, because she emailed her employer about issues of public safety in the library bathroom, or because she discussed the civil rights of San Francisco's LGBTQ community with library patrons—rather, she is being sued because she allegedly falsely accused Plaintiff of stealing toilet paper and discriminated against Plaintiff based on her gender identity. The allegations of the FAC do not pertain to any type of discussion about issues of public interest.

Moreover, because the allegations pertain to the false accusation of theft; generally, without more, they are not protected activity: "Simply stated, causes of action arising out of false

11

allegations of criminal conduct . . . are not subject to the anti-SLAPP statute. Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute[.]" *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1134-36 (2003) (defendant accused one member of a group of token collectors of stealing one of his token in a letter to 20 other token collectors, but were never reported the alleged theft to law enforcement); *Terry*, 131 Cal. App. 4th at 1546 (explaining *Weinberg*: "*private* communications about *private* matters, while not totally unprotected by the First Amendment, warrant no special protection against liability for defamation when they are false and damaging to a subject's reputation" (emphasis in original)); *see also New Show Studios LLC v. Needle*, 2014 WL 12495640, at *11 (C.D. Cal. Dec. 29, 2014) (applying *Weinberg* to find that "implied accusation" of murder was not protected by anti-SLAPP statute); *cf. Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013) ("Under California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers").

Because the Court finds Defendant has not met its burden of demonstrating the claims arise from protected activity, it need not address whether there is a probability that Plaintiff will prevail on the merits of her claims.

**CONCLUSION**

For the foregoing reasons, the Court

(1) GRANTS Defendant's Motion to Dismiss Plaintiff's two Section 1983 claims and her IIED claim, with leave to amend;

(2) STRIKES Plaintiff's request for punitive damages against Defendant; and

(3) DENIES Defendant's Anti-SLAPP Motion.

Plaintiff may amend the FAC within 14 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 11, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge